Filed 4/1/14  In re F.B. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re F.B., a Person Coming Under the Juvenile Court Law. | B247981 (Los Angeles County Super. Ct. No. CK 96287) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. L.E. et al. Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant L.E.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant M.B.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

We affirm the juvenile court's jurisdictional and dispositional orders. Both were supported by substantial evidence.

## FACTS AND PROCEDURE

### 1. *Welfare and Institutions Code Section 300 Petition[1]*

The petition as later sustained alleged:

"The child, [F.B.]'s father, [M.B.], and mother, [L.E.], have a history of engaging in violent altercations in the child's presence. On 10/24/12, the father pushed the mother into a gate in the child's presence, causing the mother to strike the mother's head against the gate to sustain swelling to the mother's head. The father grabbed the mother's arm and pushed the mother against the bushes, injuring the mother in the child's presence. On prior occasions, the father grabbed and pulled the mother by the mother's arms. On prior occasions, the father struck the mother, inflicting scratches to the mother. The child's mother failed to protect the child in that the mother allowed the father to reside in the child's home and have unlimited access to the child. The father's violent conduct against the mother and the mother's failure to protect the child endangers the child's physical health and safety and places the child at risk of physical harm, damage, danger and failure to protect."

"The child, [F.B.]'s mother, [L.E.], has a history of substance abuse and is a current abuser of methamphetamine and alcohol, which renders the mother incapable of providing the child with regular care and supervision. On prior occasions in 2012 and 2011, the mother was under the influence of illicit drugs and alcohol, while the child was in the mother's care and supervision. The mother's abuse of illicit drugs endangers the child's physical health and safety and places the child at risk of physical harm and damage."

"The child, [F.B.]'s father, [M.B.], has a history of substance abuse and is a current abuser of methamphetamine, which renders the father incapable of providing the child with regular care and supervision. On prior occasions in 2012 and 2011, the father

---

[1]     Undesignated statutory citations are to the Welfare and Institutions Code.

2

was under the influence of illicit drugs while the child was in the father's care and supervision. The father's abuse of illicit drugs endangers the child's physical health and safety and places the child at risk of physical harm and damage."

"The child, [F.B.]'s father, [M.B.], is a current and frequent user of alcohol which renders the father incapable of providing the child with regular care and supervision. On prior occasions in 2012, the father was under the influence of alcohol while the child was in the father's care and supervision. The father's alcohol abuse endangers the child's physical health and safety and places the child at risk of physical and emotional harm and damage."

The first allegation was made under section 300, subdivisions (a) and (b). The remaining allegations were made under section 300, subdivision (b).

## 2. Detention Report

According to the detention report, father had been arrested for domestic violence. A witness observed father assault mother in F.B.'s presence. Father had been drinking prior to the incident. F.B. told a social worker that the incident of domestic violence leading to father's arrest occurred after father had told F.B. to "run away from mother." Father then pushed mother into the bushes, injuring mother.

Mother informed a social worker that father had grabbed her pushed her and shoved her in front of F.B. Mother reported that was the second or third incident of domestic violence. Mother wanted father to move back home. Mother disenrolled F.B. from school because she intended to place F.B. in a new school "where paternal grandfather will not have access" to F.B. Mother denied drug use or paranoid delusions.

Paternal grandfather (grandfather) reported that mother lived in a home where she rented rooms to persons including sex offenders. Grandfather was concerned about F.B.'s safety in the home. Grandfather reported that mother used F.B. to manipulate father and that mother and father argue in F.B.'s presence. Grandfather reported finding marijuana in mother's belongings. Grandfather reported that mother suffered from paranoid delusions and that she had refused to seek mental health services.

Mother's uncle observed father act aggressively toward mother on several occasions in F.B.'s presence.

Mother's sister reported concern for F.B.'s safety in mother's care. She heard that sex offenders had been living in mother's home. Mother's sister reported mother constantly yelled and cursed at F.B. Aunt observed father's aggressive behavior towards mother. Father "'bashed' mother's head into [a] wall." F.B. told aunt she was tired of her parents fighting. Aunt reported father had a history of methamphetamine use and that father and mother used methamphetamine together. Aunt reported mother suffered from paranoid delusions. Aunt reported mother lost a dramatic amount of weight in the last two months. Mother also drank on a daily basis. According to aunt, mother would regularly buy 12-packs of beer and drink one beer after another. Aunt criticized mother for placing "beer . . . before [F.B.]" As recently as the week of the interview, aunt observed mother purchase five large beers.

On October 27, 2012, F.B. was detained and removed from her parents' custody.

*3. Jurisdictional Report*

With respect to the domestic violence, F.B. told social workers that mother and father lived together and fought daily. F.B. wanted her "mom and dad to get help with anger management so they can stop fighting." Father acknowledged that he and mother argued a lot and that he had tried to remove F.B. from mother's custody. Mother's sister also confirmed that mother and father regularly argued. Mother and father continued to live together even after the incident of domestic violence leading to F.B.'s detention and after the criminal court issued a no contact order. Mother did not obtain a restraining order.

With respect to mother and father's drug and alcohol use, F.B. reported that mother smoked and drank a lot when there was "drama going on." F.B. reported that father drank a couple of beers a day. Father admitted that in the past he smoked marijuana and used cocaine but stated that he had not used either substance recently. According to father, he and mother used methamphetamine years earlier. Mother missed her random drug testing on November 21, 2012, and November 27, 2012. Father missed

4

a drug test on November 16, 2012. Maternal aunt reported that father has a problem with alcohol.

Mother was not consistent in visiting F.B. and repeatedly called social workers to yell profanities. Mother had difficulty understanding the social workers' efforts to discuss the petition. Mother also worried that she was being followed by her neighbors and the Mexican Mafia. She was concerned that "everyone is plotting against her."

History from the Alhambra Police Department showed mother and father had a history of physical altercations and weekly verbal arguments.

### 4. *Jurisdictional Hearing and Juvenile Court Findings*

Father was the only witness to testify at the jurisdictional hearing. Father denied domestic violence except he admitted pushing mother on October 24, 2012. Father testified he had only one beer that day. Father further testified he drank only occasionally on weekends.

The court found father's testimony was not credible and credited statements in the reports that father and mother used methamphetamine together. The court sustained the allegations as quoted above. The court found there were no reasonable means to protect F.B. other than removing her from mother and father's custody.

### DISCUSSION

Both mother and father challenge the court's jurisdictional and dispositional orders. Mother also argues that the juvenile court erred in detaining F.B.

### 1. *Jurisdiction*

We review the jurisdictional findings for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) "'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment,

5

but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.]  "'[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate].'"  [Citation.]"  [Citation.]'"  (*Ibid*.)

*a. Substantial Evidence Supported the Finding That Father's Violent Conduct Against Mother, and Mother's Failure to Protect, Placed F.B. at Substantial Risk of Harm*

"Although 'the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm' [citation], the court may nevertheless consider past events when determining whether a child presently needs the juvenile court's protection.  [Citations.]  A parent's past conduct is a good predictor of future behavior.  [Citation.]  'Facts supporting allegations that a child is one described by section 300 are cumulative.'  [Citation.]  Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.'  [Citation.]"  (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

Recurring domestic violence is a basis for dependency jurisdiction.  (*In re T.V., supra*, 217 Cal.App.4th at p. 134; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193-194.) "'"Both common sense and expert opinion indicate spousal abuse is detrimental to children."'"  (*In re T.V., supra*, at p. 134, quoting *In re E.B.* (2010) 184 Cal.App.4th 568, 576.)  "Domestic violence impacts children even if they are not the ones being physically abused, 'because they see and hear the violence and the screaming.'"  (*In re T.V.*, at p. 134.)  Exposing a child to violence constitutes a failure to protect the child.  (*Id.* at p. 135.)  Violence two or more years prior to the filing of a petition has been held insufficient to support jurisdiction.  (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.)

Substantial evidence supports the jurisdictional finding that the father's domestic violence against mother, and mother's failure to protect F.B., placed F.B. at risk of harm. The domestic violence in this case was recent and triggered the filing of the petition. Although the October 24 incident triggered the dependency petition, it was not an isolated incident.  F.B. reported that her parents argue every day and need anger

management.  The evidence unequivocally shows that F.B. was aware of the fighting between her parents and that it negatively affected her.  Mother reported multiple incidents of domestic violence.  Both the maternal aunt and the maternal uncle observed father frequently act aggressively toward mother.  Not only did F.B. and her relatives report frequent abuse, but police records showed both physical abuse and numerous verbal arguments.  Notwithstanding the evidence of multiple incidents of domestic violence, mother did not obtain a restraining order and continued living with father, thereby failing to protect F.B. by continually exposing her to domestic violence.

*b.  Substantial Evidence Supported the Findings That Mother and Father Had a History of Substance Abuse and Their Use of Methamphetamine and Alcohol Placed F.B. at Substantial Risk of Harm*

To sustain the allegations under section 300, subdivision (b), the juvenile court was required to find both substance abuse and mother and father's inability to provide regular care resulting in a substantial risk of physical harm to the child.  (*In re Drake M.* (2012) 211 Cal.App.4th 754, 766.)  "The trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case."  (*Ibid.*)

With respect to mother's drug use, there was evidence that father and mother used methamphetamine together and that mother had marijuana in her belongings.  Mother missed her drug tests supporting the inference that she would have tested positive had she reported.  Aunt described mother's interest in alcohol trumping her interest in F.B.  Mother's argument that her sister and grandfather's statements should not be credited is an effort to reweigh the evidence, which is not the appropriate standard on appeal.  (*In re I.J., supra*, 56 Cal.4th at p. 773.)

Although father denied drug use and alcohol abuse at the jurisdictional hearing, the trial court did not credit his denials.  This court does not reweigh the evidence.  (*In re I.J., supra*, 56 Cal.4th at p. 773.)  Father was drinking on the day he tried to forcefully remove F.B. from mother's custody and was arrested for domestic violence perpetrated against mother.  Father reported to a social worker that he and mother used

7

methamphetamine together. Maternal aunt also reported that father and mother used methamphetamine together. Father also failed to attend his scheduled drug tests, supporting the inference that he would have tested positive.

The record suggests that the alcohol and/or drug use affected mother and father's ability to care for F.B. F.B. was aware of both mother and father's alcohol use. Aunt reported that mother prioritized drinking beer to taking care of F.B. Mother became paranoid and took F.B. out of school. Father, after drinking alcohol, attempted to forcefully withdraw F.B. from mother's custody. There was sufficient evidence that mother and father's substance abuse posed a substantial risk of harm to F.B.

## 2. *The Juvenile Court's Dispositional Hearing Is Supported by Substantial Evidence*

Both mother and father argue that because jurisdiction was unsupported removal from their custody also was unsupported. As we have explained, the jurisdictional findings were amply supported and therefore mother and father's premise fails.

In any event, the removal order was necessary in this case. Neither mother nor father addressed their substance abuse issues and both failed to appear for their scheduled tests. Both minimized the violence between them, which was confirmed not only by family members but also by the Alhambra Police Department. The finding that releasing F.B. to her parents' custody placed her at risk was amply supported. (*In re T.V., supra*, 217 Cal.App.4th 126, 135-136 [dispositional order is reviewed for substantial evidence].)

## 3. *Detention Order*

Mother challenges the detention order arguing that the detention was unwarranted. Respondent argues the challenge is moot because the juvenile court's dispositional order required removal of F.B. from her parents' custody. Although the issue is technically moot, we nevertheless consider it because it is an issue capable of repetition yet evading review. (*In re Raymond G.* (1991) 230 Cal.App.3d 964, 967.)

Under section 319, the juvenile court "shall order the release of the child from custody unless a prima facie showing has been made that the child comes within Section 300, the court finds that continuance in the parent's or guardian's home is contrary to the child's welfare, and any of the following circumstances exist:  [¶]  (1) There is a

8

substantial danger to the physical health of the child or the child is suffering severe emotional damage, and there are no reasonable means by which the child's physical or emotional health may be protected without removing the child from the parent's or guardian's physical custody."

Strong evidence supported the detention. Domestic violence had been confirmed by an independent witness and father had been arrested. There was consistent evidence that the incident of domestic violence was not an isolated one and that F.B. was aware of the domestic violence and she described her parents as fighting regularly. Father attempted to unilaterally change F.B.'s custody because he was afraid of leaving her in mother's care. There also was evidence that both father and mother abused methamphetamine and alcohol. This evidence was more than enough to establish a prima facie case required under section 319.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.



FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.



9